UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10165-RGS

NADEEM SALAMEH

v.

RONALD DUVAL, et al.

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

February 21, 2014

STEARNS, D.J.

Nadeem Salameh, a former inmate of the Massachusetts Department of Correction (DOC), brought this *pro se* lawsuit alleging that various DOC employees and medical professionals violated his federal and state constitutional rights during his incarceration.[1] The DOC defendants now move for summary judgment on all claims.[2]

## BACKGROUND

---

[1] Salameh's Amended Complaint lists thirty defendants, twenty-six employees or former employees of the DOC, and four medical professionals who worked in some capacity at the Souza-Baranowski Correctional Center, where Salame was an inmate.

[2] As discussed *infra*, there is no evidence that the medical professional defendants – Dodge, Foley, Lundberg, and Warner – were ever served with the Complaint in this case. As a result, they have not filed responsive pleadings or moved for summary judgment. DOC counsel does not represent the medical professional defendants.

In early 2010, while incarcerated at Souza-Baranowski Correctional Center (SBCC), Salameh posted his profile on an internet website that connects inmates with potential "pen pals."[3] A woman by the name of Vanessa Feurtado responded to Salameh's posting sometime before September of 2010 and the two began corresponding by letter. In September of 2010, Salameh created a large, heart-shaped collage for Feurtado consisting of scraps of romantic text and magazine pictures of watches, cars, flowers, and money, as well as pictures of Feurtado and Salameh. On November 1, 2010, Salameh presented a package containing the collage to defendant Ivan Leblanc, Salameh's housing unit sergeant, for delivery to defendant property officer Christopher Hyde, the SBCC employee responsible for processing outgoing mail packages. The

---

[3] Salameh's opposition to the instant motion for summary judgment was due on October 14, 2013. Despite receiving a requested extension until February 1, 2013, Salameh has failed to oppose defendants' Motion or offer his own statement of material facts. An unopposed motion for summary judgment is not automatically granted. Fed. R. Civ. P. 56(e)(2) ("If the opposing party does not [ ] respond, summary judgment should, *if appropriate*, be entered against that party." (emphasis added)). However, defendants' factual assertions are deemed admitted by Salameh's failure to dispute them. *See* D. Mass. Local R. 56.1 ("Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."); *Jaroma v. Massey*, 873 F. 2d 17, 21 (1st Cir. 1989) ("[T]he opposing party, by failing to file a written objection and memorandum as required by the rule, waives the right to controvert the facts asserted by the moving party in the motion for summary judgment and the supporting materials accompanying it.").

2

package was addressed to "Nona Walker, Esq.," an attorney for the Committee for Public Counsel Services, but was not marked as "legal mail" or otherwise indicated to be a privileged or confidential communication.

The package Hyde received was a noxious, makeshift manilla envelope sealed with gravy. Because it was partially open, Hyde was able to see the magazine pictures and pieces of state-issued inmate scrubs which had been cut up and used as picture borders. Hyde decided that the package contained contraband and reported his findings to the SBCC's Inner Perimeter Security Unit, which confiscated the collage. On November 5, 2010, upon learning that his package had been opened, Salameh demanded to be seen by the SBCC Mental Health Unit. On November 8, 2010, Salameh submitted a grievance protesting the opening of his mail. Later that day, after he threatened to harm himself, he was placed on a twenty-four hour mental health watch and banned from receiving visitors during. The mental health watch was terminated at 2:16 p.m. the following day, November 9, 2010, although Salameh was not transferred from the Mental Health Unit to his housing unit until 3:45 p.m. At 3:11 p.m. that day, a new attorney, Hennessey, arrived at SBCC to see Salameh but was told that he was in the infirmary and turned away. On November 10, 2010, Hyde filed a disciplinary report concerning Salameh's creation and

attempted mailing of the collage.[4] Acting on the report, defendant disciplinary officer Lawrence Amblo instituted a formal disciplinary action. Salameh, in turn, filed a grievance.

Salameh contends that he was mercilessly teased by defendant Riley about his relationship with Feurtado . In alleged retaliation for his complaints about the teasing, Riley told Salameh on November 14, 2010, that he had heard he was "running [his] mouth" and that he was "in for a [expletive] ride." Defendant Casey on the same day told Salameh that he could "make things very difficult" for him.[5] Shortly after this alleged conversation, Salameh was involved in an incident with his housing unit correction officer, defendant Edward Lane. The incident was precipitated by Salameh's refusal to relinquish a telephone receiver after his alloted time had expired, which resulted in a brief tug-of-war with Lane. Because Salameh, unbeknownst to Lane, had wrapped the telephone cord around his arm, his forearm was bruised and scraped

---

[4] Pursuant to the Code of Massachusetts Regulations, a DOC employee shall write a disciplinary report and submit it to his supervisor for review within twenty-four hours of the subject inmate action. 103 CMR 430.09. SBCC Superintendent Dickhaut, however, waived the procedural time limits on Hyde's report pursuant to 103 CMR 430.23 (time limits in the regulations may be waived by Superintendent for good cause).

[5] Defendants do not address these interactions in their statement of facts or dispute them in their brief.

during the struggle. Lane filed a disciplinary report regarding the incident. Later that afternoon, Salameh again threatened to hurt himself. He was seen by a nurse who noted that he had suffered minor injuries and prescribed bacitracin.

On November 29, 2010, after no action had been taken on his earlier grievance, Salameh filed another grievance concerning the opening and confiscation of his mail. He alleges that the next day, defendants Tocci and Vidal attempted to "bribe" him to sign a grievance withdrawal form, which they left with him with instructions to sign. A few days later on December 2, 2010, defendant Ayala iterated the request and told Salameh that Vidal "just wants to make this go away."[6] Salameh refused to withdraw the grievance.

On November 7, 2011, a disciplinary hearing was held regarding Salameh's use of prison-issued scrubs in creating his collage. Salameh, who was represented by counsel at the hearing, was found guilty of defacing or destroying state property and using the mail in violation of regulations, for which he was sanctioned with thirty days loss of telephone and canteen privileges. On November 16, 2011, Salameh appealed the disciplinary finding

---

[6] Defendants do not address these allegations in their statement of facts, but note in their brief that, although "not part of the record," Tocci and Ayala deny any such conversation.

on grounds that he had been denied the opportunity to examine two DOC employee-witnesses. His appeal was denied on November 25, 2011.

Salameh filed this action asserting 274 alleged constitutional violations during his incarceration on February 2, 2012. He completed his sentence and was discharged on June 22, 2012.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." *Id*. A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995).

DISCUSSION

The DOC argues in the first instance that thirteen defendants[7] have not been served with the Complaint as required by Fed. R. Civ. P. 4(m). *See id.* (plaintiff has 120 days after the complaint is filed to make service). Because there is no evidence in the record that service on these defendants has been made, the claims against them must be dismissed.[8] *See* D. Mass. Local R. 4.1(b) ("If on the 14th day following the expiration of the 120 day period good cause has not been shown [for failure to make service] . . ., the clerk shall forthwith automatically enter an order of dismissal for failure to effect service of process, without awaiting any further order of the court.").

Moreover, Salameh's claims against defendants in their official capacities must be dismissed. Virtually all of his federal claims are asserted under 42 U.S.C. § 1983. State officials "acting in their official capacities," however, are not "persons" subject to liability under § 1983. *Will v. Mich. Dep't of State*

---

[7] The unserved defendants are DOC employees Duval, Farley, Flynn, Ladouceur, Silva, Thomas, three John Doe defendants, and medical professionals Dodge, Foley, Lundberg, and Warner.

[8] In his motion for default judgment (subsequently withdrawn), Salameh asserts that Foley and Lundberg were properly served on March 29, 2012. Even if this is so, the claims against these defendants are dismissed for Salameh's failure to properly join defendants and failure to allege a cognizable constitutional violation, discussed *infra*.

*Police*, 491 U.S. 58, 70-71 (1989). Furthermore, § 1983 does not abrogate a State's sovereign immunity (absent a waiver by the State or an unequivocal abrogation by Congress, neither of which apply here). *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985). Thus, the Eleventh Amendment bars Salameh's claims for money damages against defendants in their official capacities. *See Graham*, 473 U.S. at 169. Salameh's analog claims under the Massachusetts Declaration of Rights and the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, § 2, are likewise barred. *See O'Malley v. Sheriff of Worcester Cnty.*, 415 Mass. 132, 141 (1993) ("Monetary damages against State officials are available only if they are sued in their individual or personal capacities for actions under color of State law."); *Caisse v. DuBois*, 346 F.3d 213, 218 (1st Cir. 2003) ("By enacting the Massachusetts Tort Claims Act, the Commonwealth has not waived its Eleventh Amendment immunity to suit in federal court."). And because he is no longer incarcerated, any claim for injunctive relief is moot. *See Gilday v. Boone*, 657 F.2d 1, 3 (1st Cir. 1981) (release of inmate from segregated detention mooted his complaint seeking injunctive relief from such confinement).[9]

---

[9] Salameh's pleadings also improperly join defendants in violation of Fed. R. Civ. P. 20(a). Because his various claims are premised on factually

8

**First Amendment (Counts I and III)**

Turning to the merits of the lawsuit, Salameh's claims fail as a matter of law. Salameh first alleges that DOC employees violated his First Amendment rights by opening and confiscating his "legal mail."[10] His basis for the contention that the heart-shaped collage constituted legal mail is his post-hoc assertion that he intended to have Attorney Walker take pictures of the collage and post them on the internet to generate "buzz" for his parole. Prisoner correspondence, however, does not qualify as legal mail solely because it is addressed to an attorney. *See, e.g., Evan v. Moseley*, 455 F.2d 1084, 1087 (10th Cir. 1972) (prisoner does not have unfettered right "to correspond with an attorney on *any* subject." (emphasis in original)); *Felton v. Lincoln*, 429 F. Supp. 2d 226, 244 (D. Mass. 2006) (granting summary judgment to defendants

---

unrelated allegations, he does not "assert[] at least one claim to relief against each of [the defendants] that arises out of the same transaction or occurrence and presents questions of law or fact common to all." *Spencer v. Bender*, 2010 WL 1740957, at *2 (D. Mass. 2010) (internal quotations and citation omitted).

[10] Salameh offers analog claims under multiple articles of the Massachusetts Declaration of Rights for each asserted federal constitutional violation. The court need not address every "extraneous claim simply because a [plaintiff] unschooled in the law had given it the wrong constitutional label." *Pagan v. Clarke*, 2010 WL 3515730, at *1 (D. Mass. Sep. 7, 2010). Even assuming a private right of action directly under an applicable article of the Massachusetts Declaration of Rights, none of the articles provides such broad protection as to reach Salameh's invented claims.

on plaintiff's claim that prison officials interfered with his confidential communications to attorney because plaintiff mislabeled mail as privileged).

As an initial matter, Salameh introduced in his disciplinary proceeding a letter from Attorney Walker stating that her agreement to receive and photograph the collage "ha[d] nothing at all to do with my representation of you." But even indulging Salameh's theory of the case, his avowed legal purpose was to place the collage in the *public* sphere, not to communicate confidentially about legal matters with his attorney. In any event, "the possibility that communications may contain contraband warrants prison officials inspecting the communications, including letters from attorneys." *Hudson v. O'Brien*, 2010 WL 2900529, at *2 (D. Mass. July 21, 2010);[11] *See also id.* at *3 (an isolated incident of interfering with a prisoner's mail is insufficient to establish a constitutional claim); *Davis v. Goord*, 320 F.3d 346,

---

[11] Salameh's claim that the DOC defendants are liable under the Massachusetts Tort Claims Act (MTCA) (Count VIII) also fails because a prison official's opening and confiscation of a package displaying contraband is not a tort. Furthermore, the MTCA governs tort liability for "public employers." Mass. Gen. Laws. ch. 258, § 1. Negligence claims may only be brought against a public employer, not public employees, and intentional torts may be asserted against the employee in his *individual* capacity. *See Parker v. Chief Justice for Admin. and Mgmt. of the Trial Court*, 67 Mass. App. Ct. 174, 180 (2006); *see also Almeida v. Rose*, 2013 WL 6524652, at *8 (D. Mass. Dec. 9, 2013) (claims against public employee for intentional torts not cognizable under the MTCA).

352 (2d Cir. 2003) (same). Salameh's First Amendment claims premised on the opening of his mail will be dismissed.[12]

Salameh also alleges that various DOC employees retaliated against him by filing a disciplinary report regarding the collage and preventing him from calling witnesses at the disciplinary hearing; defaming him; denying him a visit from his attorney; and denying him certain medical accommodations and treatment.[13]  A retaliation claim under the First Amendment requires a demonstration "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis*, 320 F.3d at 352 (internal quotations and citation omitted).  Courts generally approach First Amendment claims like Salameh's "with skepticism

---

[12] To the extent Salameh claims that he suffered a constitutional violation when he was unable to meet with Attorney Hennessey while in the Mental Health Unit, this claim also fails because "[m]ere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Davis*, 320 F.3d at 352 (internal quotations and citation omitted). Moreover, any delay became academic when the attorney told Salameh not to contact him three days later after he received harassing comments from him.  In any event, the delay was the "product of prison regulations reasonably related to legitimate penological interests" and thus not of constitutional significance. *Lewis v. Casey*, 518 U.S. 343, 362 (1996).

[13] Salameh's claimed act of retaliation by refusing to provide "special medical sneakers" is barred by the court's September 13, 2012 Order.

and particular care because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized [by a prisoner] as a constitutionally proscribed retaliatory act." *Id.* (internal quotations and citation omitted).

Salameh's retaliation claims are barred in the first instance because he did not exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), and its state analog, Mass. Gen. Laws ch. 127, § 38F.[14]  Nor has he created a genuine dispute of fact as to whether he can satisfy the elements of a retaliation claim.  With the exception of one claimed basis for the alleged retaliation (refusing to sign a grievance withdrawal form), Salameh has failed to identify any protected conduct upon which a retaliation claim could plausibly be predicated.  And, as to all claimed acts of retaliation, defendants have offered a legitimate penological purpose for their actions, meaning that Salameh cannot show that the adverse actions would not have occurred "but for" the alleged wrongful conduct.  *See McDonald v. Hall*, 610 F.2d 16, 18-19 (1st Cir. 1979) (noting that "the requirement of a 'but for' showing together with the wide latitude afforded prison officials . . . may make summary judgment particularly appropriate.").

---

[14] Although Salameh is no longer imprisoned, he was incarcerated at the time he filed the instant lawsuit and thus the PLRA governs his claims. *See In re Smith*, 114 F.3d 1247, 1251 (D.C. Cir. 1997) ("If a litigant is a prisoner on the day he files a civil action, the PLRA applies.").

**Fourth Amendment (Count II)**

Salameh's claims that confiscation of the collage constituted an illegal search and seizure and conversion of property fails for the reasons discussed above. Moreover, "[t]he fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects . . . ." *Hudson v. Palmer*, 468 U.S. 517, 538 (1984) (O'Connor, J., concurring). Thus, Salameh's Fourth Amendment claim must be dismissed. *See Donovan v. Magnusson*, 2005 WL 757585, at *2 (D. Me. Mar. 11, 2005) (claim that prison official wrongfully opened inmate's mail outside of his presence is not cognizable under the Fourth Amendment).

**Eighth Amendment (Count IV)**

Salameh's Eighth Amendment claims alleging harassment by Riley, Lundberg, Casey, and Lane, and excessive force by Casey and Lane all fail. The vague, myriad "harassment" allegations, even if supported by evidence, would not amount to constitutional violations. *See Skinner v. Cunningham*, 430 F.3d 483, 488 (1st Cir. 2005) ("Generally speaking, 'after incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'") (alterations omitted), quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Salameh's excessive force and "assault and battery" claims premised on the struggle over possession of the

telephone also fall well short of a cognizable Eighth Amendment claim. *See id.* ("The critical question in [an Eighth Amendment] case is whether the force was applied maliciously and sadistically for the very purpose of causing harm, rather than 'in a good-faith effort to maintain or restore discipline.'") (internal quotations and citations omitted).[15]

**Fourteenth Amendment: Due Process (Counts VI and VII)**

Salameh alleges several due process violations related to the disciplinary report and the disciplinary hearing that resulted for violations of mail regulations and destroying state property. An inmate's liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Salameh's penalties, thirty days loss of telephone and canteen privileges, do not rise to the level of an "atypical and significant hardship," and thus are not constitutionally cognizable. *See Hudson*, 2010 WL 2900529, at *1. Moreover, even if Salameh had such an interest, he received the process that was due. *See id.* at 2 ("[D]ue process dictates that 'the inmate must receive: (1) advance written notice of the

---

[15] Salameh's assault and battery claim also fails under common law. *See Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010) (reasonableness of force determination under § 1983 controls determination in claim for common-law assault and battery).

14

disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."), quoting *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).[16]

**Massachusetts Civil Rights Act (Count X)**

Salameh next claims that by uttering that he "could make things very difficult" for Salameh, Casey, and Lane (the latter by allegedly nodding his head in the affirmative) violated the Massachusetts Civil Rights Act (MCRA), Mass. Gen. Laws ch. 12, §§ 11H and 11I, (Count X).[17] He further alleges a violation of the statute by Tocci and Vidal by their (unsuccessful) attempt to "bribe" him into withdrawing his grievance.[18]

---

[16] Any challenge to the disciplinary proceedings under the Commonwealth's certiorari statute, Mass. Gen. Laws ch. 249, § 4, is untimely and moot as the only remedy available for procedural irregularities is a new hearing free of error. *Nelson v. Comm'r of Corr.*, 390 Mass. 379, 398 (1983).

[17] Although Salameh submitted a grievance related to his struggle over the telephone with Lane, it does not appear that he did so with respect to the purported threat and thus this claim, too, would be barred by the exhaustion of remedies requirement of the PLRA.

[18] Salameh's negligence claim under § 1983 (Count XII), which is apparently premised on the denial of visitation with an attorney while he was in the Mental Health Unit, fails initially because the conduct was not tortious and, more to the point, a negligence claim is not actionable under § 1983. *Connolly v. Cnty. of Suffolk*, 533 F. Supp. 2d 236, 242 n.10 (D. Mass. 2008).

To establish a claim under the MCRA, a plaintiff must demonstrate that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by way of threats, intimidation or coercion. *Orwat v. Maloney*, 360 F. Supp. 2d 146, 164 (D. Mass. 2005); *see also Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994). Salameh cannot identify any personal right that was infringed by Lane's purported statement or the purported bribe. Salameh's MCRA claims will be dismissed.

**"Accessory After the Fact"; Conspiracy; Deliberate Indifference; Supervisory Liability (Counts V, XI, XIII, and XIV)**

The law of accessory after the fact is a criminal prohibition and does not, alone, impose civil liability.[19] To the extent Salameh claims a cover-up to

---

Salameh's emotional distress claim (Count XV) also appears to be predicated on the alleged threats and insults from various DOC employees, but these cannot, as a matter of law, support such a claim. *See Foley v. Polaroid Corp.*, 400 Mass. 82, 99 (1987). In any case, the purported intimidation attempts do not come close to the "extreme and outrageous" conduct necessary to support an intentional infliction of emotional distress claim. *Id.*

[19] Salameh also alleges a civil claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 (Count IX). A successful RICO claim requires a showing of "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003). Salameh has not alleged (nor does the evidence support) anything approaching criminal

deprive him of his right of access to the courts, his claim fails because there is no evidence that he was denied such access or that any defendant attempted or succeeded in preventing him from discovering or proving a violation of his constitutional rights. *See Gonsalves v. City of New Bedford*, 939 F. Supp. 921, 926 (D. Mass. 1996). Likewise, Salameh cannot state a claim for conspiracy because there are no facts alleged that plausibly support the existence a conspiratorial agreement or "an actual deprivation of a right secured by the Constitution and laws." *Orwat*, 360 F. Supp. 2d at 156. Because there does not exist even minimal evidence suggesting any constitutional violation by any of the defendants, his derivative claims for supervisory liability also fails. *See Pineda v. Toomey*, 533 F.3d 50, 54 (1st Cir. 2008) ("Under 42 U.S.C. § 1983, a supervisory official may be held liable for the behavior of his subordinates only if (1) the behavior of his subordinates results in a constitutional violation, and (2) the supervisor's action or inaction was affirmatively linked to that

---

activity on the part of defendants, much less two, related predicate acts of racketeering activity, as defined by 18 U.S.C. § 1961, amounting to "a threat of continued criminal activity." *Id.* (internal quotation marks and citation omitted); *see Bryant v. Sells*, 2010 WL 4705173, at *2 (E.D. Cal. Nov. 12, 2010) ("Flagging, delaying, and opening Plaintiff's mail is not 'racketeering activity.'"). Moreover, "[t]he person or persons alleged to be engaged in racketeering activity must be entities distinct from the enterprise." *Odishelidze v. Aetna Life & Casualty Co.*, 853 F.2d 21, 23 (1st Cir. 1988). Accordingly, his RICO claim will be dismissed.

behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference.") (internal quotations, citation, and alterations omitted).

Finally, Salameh's deliberate indifference claims fail as a matter of law. His claim that defendants were indifferent to his "grievances" and failed to properly investigate his recriminations against specific DOC employees is a non-starter because an inmate is not entitled to a particular grievance procedure or result. *Spencer*, 2010 WL 1740957, at *3. As to his claims of indifference to his medical needs, Salameh has not (and cannot) demonstrate that his forearm bruise constituted an "unusually serious risk of harm" that created a medical necessity left intentionally unaddressed. *See Manarite By & Through Manarite v. City of Springfield*, 957 F.2d 953, 956 (1st Cir. 1992).

ORDER

For the foregoing reasons, defendants' motion for summary judgment is ALLOWED. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE